**UNITED STATES of America,
Plaintiff,**

v.

**Edwin M. BALANOW, Defendant.**

**No. H Cr 74–189.**

United States District Court,
N. D. Indiana,
Hammond Division.

April 14, 1975.

John R. Wilkes, U. S. Atty., Fort Wayne, Ind., for plaintiff.

Carl Leibowitz, South Bend, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

The defendant, Edwin M. Balanow, filed Motion to Suppress on February 3, 1975. Evidentiary hearing was held thereon at 3:00 o'clock P.M., April 8, 1975.

On October 18, 1974 Indiana State Trooper Robert Seiffert was on routine patrol heading east on the Indiana Tollway just east of the Burns Harbor Plaza when he was nearly run off the road by a late model automobile. Trooper Seiffert stopped the vehicle and arrested the driver, the defendant, Edwin M. Balanow, for improper change of lanes. When the defendant failed to produce a valid driver's license, and Trooper Seiffert ran a check which revealed that Mr. Balanow's driver's license had been suspended, Trooper Seiffert then arrested the defendant for driving with the suspended license and radioed for a tow truck for the purposes of impounding the vehicle.

The radio call for a tow truck was monitored by Indiana State Trooper Triffin Magrames who rode to the scene to assist Trooper Seiffert. Upon arrival and at the request of Trooper Seiffert, Trooper Magrames began an inventory of the interior of the automobile after obtaining the keys from Seiffert. In the trunk of the automobile he found a sawed-off shotgun wrapped in a terry-cloth towel.

Trooper Seiffert stated that he caused the inventory of the automobile to be made pursuant to procedure established by the District Director of the Indiana State Police incident to the impoundment of a motor vehicle. He further stated that the purpose of an inventory at that point in time was to protect both the individual arrested and the State Trooper involved.

■ An Indiana State law enforcement officer is authorized by law to provide for the removal of such vehicles to the nearest available garage or other place of safety. Indiana Code of 1971, 9–4–1–113, Burns' Ann.Stat. § 47–2121. When an officer causes a motorist involuntarily to leave his vehicle as in the arrest of a person, a duty arises as was indicated by the policy of the Indiana State Police, for that officer to protect the vehicle and property of the person arrested. Cf., Opinions of the Attorney General—1972, No. 42 at p. 213 (1962). The following observations by Bruce G. Burner in his article "Search and Seizure: Status and Methodology", sets forth the rationale behind the inventory searches.

> The police seizure of an automobile incident to the arrest of the occupant is generally defensible as serving interest in road safety, the protection of the car itself, and the convenience of the owner. . . . Often, warrantless searches of seized automobiles without probable cause are sought to be upheld as "inventories." The urged rationales are the police's duty to protect items belonging to the car's owner and a need to protect themselves from civil liability for the actual or alleged loss or destruction of valuables. The inventory process protects the police in two ways: (1) By reducing valuables to their exclusive control, it prevents loss or destruction; and (2) by making a record of the valuables, it facilitates a defense against unjust claims by embittered arrestees.
>
> 8 Valpariaso Law Review 471 (No. 3, 1974)

■ Inventory searches under certain circumstances akin to those in the present case have been upheld as reasonable under the Constitution.

In Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the Supreme Court of the United States upheld the warrantless search of a car impounded as evidence pursuant to a state statute. The police were required to seize the car and keep it until forfeiture proceedings could be completed. A week later, while forfeiture proceedings were

still pending, a police search discovered incriminating evidence in the glove box. Despite the conceded absence of probable cause, the Supreme Court upheld the search.

> They seized it to impound it and they had to keep it until forfeiture proceedings were concluded. . . .
> The forfeiture of petitioner's car did not take place until over four months after it was lawfully seized. It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it.

Id. at 61–62, 87 S.Ct. at 791.

The Fifth Circuit held in United States v. Lipscomb, 435 F.2d 795 (5th Cir. 1970), that evidence obtained as a result of a routine inventory undertaken to inventory property in possession of an arrested person is admissible. United States v. Robbins, 424 F.2d 57 (6th Cir. 1970) involved suitcases which were searched incident to an arrest. In dictum, the court said that "Since the owners of the suitcases were being held in custody, it was the duty of the officers to make an inventory of the contents of the suitcases." 424 F.2d at 59. A similar policy was expressed in United States v. Pennington, 441 F.2d 249 (5th Cir. 1971), cert. denied 404 U.S. 854, 92 S.Ct. 97, 30 L.Ed.2d 94 (1972):

> "Personal effects unlawfully contained within lawfully impounded automobiles must be protected for the benefit of owners. Officers cannot send property off in the custody of others without knowing what is due to be returned. The only reasonable method for the prevention of such an occurrence after a valid arrest necessitating the detention of the automobile is to inventory contents and to take receipts from the person who is thereafter to be responsible. . . . "

Id. at 252.

A recent Supreme Court case lends strong support to upholding the reasonableness of an inventory search. In Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), the Supreme Court upheld the warrantless search of the trunk of a disabled vehicle that was legally within police custody. The court emphasized the distinction between searches of dwellings and searches of vehicles in finding that the failure to procure a warrant did not necessarily render the search unreasonable. The defendant while driving in Wisconsin lost control and his car crashed through a guard rail into a bridge abutment. He subsequently called the local police to report the matter, telling them he was a Chicago police officer. When the police confronted him, they judged him drunk and arrested him for drunk driving. The car was towed to a private garage at police direction. The police, under the impression that Chicago police were required to carry their revolvers at all times and not having found it on the defendant, searched the car for it pursuant to "standard procedure" in such cases. A search of the trunk produced bloodstained items later admitted at defendant's murder trial. There is no indication the police had the slightest suspicion of a murder prior to this discovery.

No probable cause for the search at all existed. Even if there was probable cause to believe that the revolver was in the car, ("reasonably believed" only is used by the Court) there was no probable cause that the item sought was crime-connected. The search was initiated rather to protect the general public "who might be endangered if an intruder recovered a revolver from the trunk of the vehicle."

> The court's previous recognition of the distinction between motor vehicles and dwelling places leads us to conclude that the type of caretaking "search" conducted here is of a vehicle that was neither in the custody nor on the premises of its owner, and that it had been placed where it was by virtue of lawful police action, was not unreasonable solely because a warrant had not been obtained.

Id. at 447, 93 S.Ct. at 2531.

Therefore, the defendant's Motion to Suppress is denied.