## No. 27582

### The People of the State of Colorado v. Eugene Meeks

(570 P.2d 835)

Decided November 7, 1977.

Dale Tooley, District Attorney, Brooke Wunnicke, Chief Appellate Deputy, for plaintiff-appellant.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Alvin D. Lichtenstein, Deputy, for defendant-appellee.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

This interlocutory appeal was taken by the district attorney after the trial court granted the defendant's motion to suppress. We reverse.

The defendant is charged with second-degree burglary[1] and theft.[2] The charges against the defendant are based on evidence which was seized from the trunk of the defendant's automobile.

On September 25, 1976, a police radio dispatch directed a police officer to the 1900 block on Wabash in Denver to investigate a report that a person had passed out in an automobile. When the officer arrived at the scene, he observed a 1970 Plymouth bearing a temporary Colorado registration tag and the occupant's arm hanging out of the front window of the driver's side. He approached the car, checked to see if the occupant was injured, then shook the occupant to awaken him and determine whether he was well. The officer inquired whether the occupant was all right. The occupant mumbled an unintelligible answer. Because the occupant appeared to be groggy, the officer asked him to step out of the automobile.

The officer asked the occupant his name, to which he replied, "Jim Trotter." The occupant was unable to produce any identification. The officer then checked the temporary license tag and found that the car was registered to a Eugene Meeks. The officer asked the occupant if the automobile belonged to him. The occupant replied that it did. The officer next confirmed by police radio that the automobile and the temporary registration tag belonged to Eugene Meeks and that the car had not been reported stolen. Upon further inquiry, the occupant reiterated that he was "Jim Trotter" and that the automobile belonged to him. The officer then placed the defendant under arrest for furnishing false information to a police officer and placed him in the police patrol car to be taken to the police station.

---

[1] Section 18-4-203, C.R.S. 1973.
[2] Section 18-4-401, C.R.S. 1973.

Pursuant to the regulations of the Denver Police Department[3] regarding vehicle security after the arrest of the person in control of a vehicle, the officer decided to impound the car. The officer removed the keys from the ignition, gathered the personal property of the defendant from the automobile's interior, and opened the trunk of the automobile to secure the personal property therein. Upon opening the trunk, the officer observed stereo equipment which was inscribed with a social security number. The officer recognized the equipment as property that had been reported stolen in a burglary which he had personally investigated earlier that day.

At the evidentiary hearing, the officer testified that his purpose in opening the trunk was to secure the defendant's personal property, pursuant to standard procedure and regulation. The trial court concluded that the officer had acted pursuant to regulations which directed police officers to secure personal belongings from automobiles which were impounded. Nonetheless, the trial court held that a warrant should have been obtained before the officer conducted the caretaking procedure. The court held that *People v. Lorio*, 190 Colo. 373, 546 P.2d 1254 (1976), established the requirement that the police secure a warrant whenever an automobile search is conducted on a car in police custody. We disagree.

■ The conduct in this case must be justified, if at all, as an inventory search. The officer testified that he opened the trunk to secure the personal belongings of the defendant. Although an inventory search was not to be conducted at that time, the officer had the duty under the police department regulations to secure personal property and inventory the contents of the car, including the trunk.

We reviewed the law of inventory searches in *People v. Counterman*, 192 Colo. 152, 556 P.2d 481 (1976). In *Counterman*, we declared that:
"[T]he legitimate purposes for inventory searches provide one measure of the limits of reasonable police intrusion. These purposes include (1)

---

[3]Denver Police Department Regulations
"206.04 Towing and/or Impounding Vehicles.

"(1) Cars will be towed when, in the officer's opinion, it is necessary that such cars be moved and/or impounded when the vehicle is:
* * * *

"c. In Need of Police Protection:
"1. When drivers are arrested, the officer will tow the car to the City Car Pound unless the driver is mentally capable and authorizes a responsible individual at the scene to take custody of the vehicle.
* * * *

"(3) [T]he investigating officer will be totally responsible for the disposition of all personal property in the vehicle.
"(4) Procedure to be followed when Impounding Vehicles.
"a. Officers shall make out an Impounded Vehicle Report Form #224 for each vehicle towed and shall list all articles left in the vehicle. They shall sign the report in the presence of the tow truck driver, who shall acknowledge same by his signature. Only spare tires, jacks, chains, etc. shall be left in any vehicle being towed to the Car Pound.
"b. All articles such as clothing, blankets, cameras, hand tools and other personal property shall be removed, inventoried and then delivered to the Property Bureau."

protection of the owner's or occupant's property, (2) protection of the police officers from liability based upon subsequent claims of missing or damaged property, *see South Dakota v. Opperman, supra*, and (3) protection of the police officers and the public from dangerous instrumentalities inside the car. *See Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *People v. Roddy, supra.* Another limiting factor is whether the 'caretaking' or protective functions of the search are tainted as pretexts for 'concealing an investigatory police motive.' *South Dakota v. Opperman, supra.* . . .

"[T]he glove compartments in both *Roddy* and *Opperman* were unlocked. Perhaps more important, glove compartments, like automobile trunks, are 'containers' which cannot be secured beyond the ability to secure the automobile itself. Thus, insofar as the police had impounded the vehicle and had a proper basis for conducting an inventory search, the inventory purposes could not be attained without intrusion into these areas. *See People v. Roddy, supra; People v. Trusty, supra.*"

In *Counterman, supra*, we cited with approval the following language from *Mozzetti v. Superior Court* (Burke, J. concurring), 4 Cal.3d 699, 484 P.2d 84, 94 Cal. Rptr. 412 (1971), which is particularly pertinent to the present case:

"As pointed out in the numerous Court of Appeals cases cited by the majority, the routine practice of making such inventory inspections is reasonably necessary to safeguard the owner's property from loss or damage, and to protect the police and storage bailee from unfounded claims. *Although, as the majority point out, the foregoing considerations do not furnish the police an excuse for rummaging through closed suitcases or sealed packages*, the police do have the authority, and indeed the responsibility, to inspect and inventory all items of personal property in plain sight within the vehicle and, if necessary to lock these items in the trunk or transfer them to some other secure place for safekeeping." (Emphasis added by the trial court.)

Inventory searches are always limited by the legitimate purposes which justify them. Thus, in *People v. Rutovic*, 193 Colo. 397, 566 P.2d 705 (1977), we held that an inventory that included a search of a zippered cover of the automobile's armrests was unreasonable and beyond the scope permitted by the purposes of inventory searches. Such a search is tantamount to general rummaging and is accusatory, rather than administrative, in nature. Inventory procedures cannot be used as pretexts for concealing investigatory searches. *People v. Counterman, supra.*

In *People v. Lorio, supra*, we were faced with an investigatory search for evidence connected to the crime for which the defendant was arrested. No claim was made that the evidence had been discovered during a valid inventory search. *Lorio*, therefore, did not establish that a warrant is always required for searches of automobiles which have been impounded.

In this case, the officer acted to comply with the Regulations of the Denver Police Department concerning inventory searches of impounded vehicles. The purpose of the officer's actions was to protect the personal property of the accused — a legitimate purpose that justifies inventory searches. Furthermore, the scope of the caretaking procedure was limited by that purpose — the trunk was opened to secure personal property — no closed containers were searched. The officer was not engaged in an investigatory search; indeed, the officer had no reason to believe that the defendant was connected with any other crime. The warrantless inventory search was, therefore proper, since it was conducted within reasonable limits for legitimate purposes.

The evidence discovered during the valid inventory procedure was in plain view and is admissible against the defendant. *People v. Counterman, supra*; *People v. Tangas*, 190 Colo. 262, 545 P.2d 1047 (1976); *People v. Trusty*, 183 Colo. 291, 516 P.2d 423 (1973).

Accordingly, the ruling of the trial court is reversed, and the cause is remanded with directions to deny the defendant's motion to suppress.