OPINION OF THE COURT
Harold Fertig, J.
On January 30, 1978, prior to trial, a Huntley hearing was held to determine whether certain alleged statements made by the defendant and property seized as a result of a search of defendant’s automobile should be suppressed. At the conclusion of the hearing a further motion was made again requesting suppression of the oral statements made by the defendant, suppression of property seized from the motor vehicle alleged to be driven by the defendant and for an order dismissing the information charging the defendant with a misdemeanor pursuant to section 220.03 of the Penal Law or in the alternative reducing said charge to a violation under article 221 of the Penal Law. And, finally, dismissing all pending charges in the interests of justice.
At the hearing Police Officers Strand and Miller were the only witnesses. The court finds that they were both members of the Hempstead Village Police Department and each responded to a call from the headquarters operator who advised each individually that someone had called in, stating that a thin male Black, dressed in a white T-shirt, with dark rings about the sleeves, wearing grey pants was selling drugs to *305 children. Both went to the described location and observed the defendant who appeared to meet the description. Each observed him for a while but saw no evidence of any sale of contraband. While watching they saw him walk over to a blue Ford which was parked in a "tow-away zone”. Both officers approached the vehicle when the defendant was seated in the front seat behind the wheel of the car. One of the officers then told defendant he was parked in a "tow-away zone” and that they had a report he was selling drugs. Defendant jumped out of the car, began yelling profanities, claimed that he was being "set up” and a crowd collected, mostly from a neighboring bar, whereby the officers called for assistance and arrested the defendant for "disorderly conduct”.
Defendant argues that at the hearing there was insufficient proof of the commission of the violation of disorderly conduct. This court finds, however, that there was sufficient probable cause for the arrest, based upon the uncontroverted testimony as to the officers’ observations. (People v Oden, 36 NY2d 382.)
A third police officer, Officer Enright, who assisted in the arrest, drove the vehicle in question from the "tow-away zone” to police headquarters, after obtaining the keys to the car from the defendant. While Officer Strand was questioning the defendant at police headquarters for the purpose of processing, Officer Miller searched the blue Ford. During this period of time the defendant was in custody and there was no evidence that he had been given any Miranda warnings. The search of the car was made in the police parking lot and was being conducted as part of the regular procedures of the police department to inventory and preserve the defendant’s property. As the search was being conducted, Officer Miller was listing the property on a property form. He examined the interior of the automobile, the front seat, back seat, the glove compartment and opened the trunk with the keys previously obtained from the defendant. Under the front seat of the vehicle he found a quantity of what appeared to be marihuana, in the trunk he found a spare tire and a suitcase. He opened the suitcase and discovered some clothing, a bag containing some pills and hypodermic needles and a syringe. After inventorying everything he left the clothing, suitcase and other personal property in the trunk, took out the needles and syringe and locked the trunk. Officer Miller then showed the marihuana, hypodermic needles and syringe to Officer Strand in the presence of the defendant. Whereupon, the *306 defendant stated that the marihuana was his but the needles were not his and belonged to a friend.
The first question to which the court will address itself is that of dismissing or reducing the charge of possession of marihuana. The defendant argues that as of July 29, 1977, the effective date of the Marihuana Reform Act of 1977, he was no longer subject to punishment under section 220.03 of the Penal Law, since the new law would make him subject to ex post facto legislation or, at the most, the new legislation should be applied retrospectively to all pending actions and the charge should be reduced to a violation under article 221.
The defendant is charged with disorderly conduct, criminal possession of a controlled substance in the seventh degree, in violation of section 220.03 of the Penal Law and criminal possession of a hypodermic instrument in violation of 220.45 of the Penal Law for acts committed on July 14, 1977.
The Marihuana Reform Act of 1977 was adopted by the Legislature on June 29, 1977 under chapter 360 of the Laws of 1977. Section 12 of that chapter provides, "This act shall take effect on the thirtieth day after it shall have become a law and shall be applicable to acts committed on or after such date.” (Emphasis added.)
The principles relating to retrospective application of new law were set forth in Stovall v Denno (388 US 293, 296-298) which has been cited in two cases in New York: People v Mallette (50 AD2d 654) and People v Simone (48 AD2d 497). The findings are that errors impinging upon questions of whether the defendant is guilty are susceptible of correction retroactively where they remedy the procedures for determining the truth of the facts. The criteria to be taken into consideration are: (a) the purpose to be served by the new standards, (b) the extent of reliance by law enforcement authorities on old standards and (c) the effect on the administration of justice that a retrospective application of the new standards would have. (See Desist v United States, 394 US 244; People v Morales, 37 NY2d 262.) Retrospective application of a change in the law brought about by a court decision was originally used by the courts upon a theory that Judges were deemed not to make law but to pronounce law which was always there but was waiting to be correctly stated. The application requested here is based upon a change brought about by a new statute which provides for its effective date.
The statute in question is not an ex post facto law since it *307 does not impose a punishment for past acts (People v Vernon, 83 Misc 2d 1025; De Veau v Braisted, 363 US 144). It is also not a remedial law in the sense that it remedies a procedure for the truth determining process. The new standards came about from a change in thinking concerning the possession of marihuana and the liberalization of the laws. But that change by the wording of the statute itself provided that it would affect acts which took place on and after a specific date. If the Legislature intended the change to take effect upon passage, it could have so provided and not state that it take effect 30 days hence. "The general rule is that statutes are to be construed as prospective only, unless a clear expression of contrary intent is found.” (People ex rel. Kaminstein v Brooklyn State Hosp., 49 Misc 2d 57.) Certainly, to give retrospective effect to a new statute such as this would adversely affect the administration of justice. How far back would such retrospective effect be applied? Law enforcement authorities cannot be charged with applying new standards for the basic elements of a crime or violation before the law is in effect.
With regard to defendant’s application to dismiss in the interests of justice, this court finds no compelling consideration or circumstance to warrant the granting of such motion as set forth in CPL 170.40, nor has the defendant presented any evidence to that effect.
The defendant claims that the search of the vehicle was improper and, therefore, any fruit of the search should be suppressed. The vehicle was parked in a "tow-away” zone and the defendant who was the person seated in the driver’s seat in possession of the keys to the car was arrested for probable cause. There was an inventory search as a measure taken to protect the car and its contents while in police custody. The impoundment, the search and the seizure of the evidence found were proper without a search warrant (People v Hassele, 53 AD2d 699; People v Sullivan, 29 NY2d 69; People v Robinson, 36 AD2d 375; People v Butler, 44 AD2d 423; Harris v United States, 390 US 234). In Sullivan (supra), the vehicle was similarly in a "tow-away zone” and the evidence discovered was found inside a briefcase, which was opened as part of the police search. Here the defendant was arrested for disorderly conduct in addition to the illegally parked vehicle. In the case of State v Dombrowski (44 Wis 2d 486) the police, after arresting the defendant for drunk driving, opened the trunk of his car and found evidence of homicide. It was held *308 not to be an unreasonable search. In People v Kern (67 Misc 2d 495) the defendant was legally arrested and the officer using keys left in the ignition opened the trunk of the car as part of his job to "voucher” the contents. He observed stolen machinery and the court did not suppress the evidence. It follows then that opening the trunk of the car was part of the officer’s responsibility in making an inventory of its contents and, as in Sullivan, once observing the suitcase he had the further obligation to list its contents. Having done so, he properly took possession of what he considered to be contraband (People v Butler, supra; People v Middleton, 50 AD2d 1040).
After the discovery of the contraband Officer Miller showed the evidence to Officer Strand while Officer Strand was processing the defendant. At that time the police were not conducting a routine investigation; they had already arrested the defendant and there was no doubt that he was in custody, and no Miranda warnings had been given. It cannot be argued that the defendant was arrested for disorderly conduct and the admission in question was for an entirely different crime (see People v Townes, 41 NY2d 97; People v Taylor, 27 NY2d 327).
The defendant was in custody and had not been given his rights pursuant to Miranda, but he was not being interrogated, and his statement was not the result of an in-custody interrogation. Nor was he confronted or accused of any wrongdoing with regard to the contraband (see People v Gold, 57 AD2d 575). The defendant was being processed and the questions being put to him were in regard to pedigree. Upon observing the evidence as it was shown to Officer Strand by Officer Miller he made a voluntary and spontaneous statement. Voluntary statements of any kind are not barred by the Fifth Amendment. (Miranda v Arizona, 384 US 436, 478.) In People v Jackson (41 NY2d 146, 151) our Court of Appeals held that "it is equally well settled however that '[a]ny statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence.’ ” "Absent interrogation, post Miranda decisions have consistently held that voluntary or 'spontaneous’ statements made by suspects who were plainly in custody are admissible” (People v Torres, 21 NY2d 49, 54).
For the reasons set forth, all portions of the defendant’s *309 motion are denied. The case is set down for trial on February 27, 1978, Criminal Part VIII of this court.