364 So.2d 578 (1978)
STATE of Louisiana
v.
Quinn Odell HATFIELD.
No. 62125.
Supreme Court of Louisiana.
November 13, 1978.
*579 Louis A. Heyd, Jr., John M. Standridge, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Marilyn C. Castle, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Quinn Odell Hatfield and Audrey Harrington were charged in the same information with possession with intent to distribute marijuana in violation of La.R.S. 40:966A. They were jointly tried by jury. Hatfield was found guilty as charged and sentenced to serve six years at hard labor. On appeal, he relies on six assignments of error for reversal of his conviction and sentence. Finding merit in one of the assigned errors, we need not consider the other five.
Defendant contends the trial judge erred in denying his motion to suppress physical evidence. He argues that the evidence was seized as a result of an unconstitutional search of an automobile.
A pretrial hearing was held on the motion to suppress. Defendant called three witnesses to testify at this hearing: Trooper Otis Jones, Sgt. Roy David Gilfour and Audrey Harrington. Their testimony reveals the following circumstances surrounding the search of the automobile and the seizure of the evidence at issue.[1]
*580 At about 12:15 a. m. on December 2,1976, Trooper Jones, in the course of his regular traffic patrol, clocked a vehicle traveling on Interstate 10 at a speed of 73 miles per hour in a 55 miles per hour speed zone. After the vehicle was stopped on the shoulder of the highway, Trooper Jones ordered the driver (defendant) out of the car. A check of his driver's license revealed that it was suspended. Trooper Jones then called a private wrecker service to tow defendant's vehicle and placed defendant under arrest for driving with a suspended license. Upon instructions from his supervisor, Sgt. Gilfour, over the patrol car radio, Trooper Jones then ascertained whether the passenger, Ms. Harrington, could take custody of the vehicle. In accordance with police policy, Trooper Jones determined that he could not release the vehicle to Ms. Harrington since she was not related to defendant and possessed an expired driver's license. At this point, Sgt. Gilfour arrived on the scene to assist Trooper Jones. Ms. Harrington, who was also out of the vehicle at this time, accepted an offer by the police officers to ride with them to a place where she could telephone and make arrangements to be picked up. Upon their request, both defendant and Ms. Harrington received permission to retrieve their personal belongings from the vehicle. Defendant returned with a shoulder bag and Ms. Harrington returned with her purse. The police officers informed them that, in accordance with police policy, the bags would have to be searched for weapons before either could ride in the patrol car. The subsequent search of defendant's shoulder bag disclosed a corncob pipe containing what appeared to be marijuana residue; Ms. Harrington's purse was found to contain a pipe and a Sucrets box with burnt marijuana cigarettes in it. At this point, defendant was additionally charged with possession of marijuana and Ms. Harrington was placed under arrest for said offense.
Thereafter, a tow truck arrived and, pursuant to a standard inventory form, the officers "went to the car and started looking to find anything of value." On the floor board of the front of the vehicle, the officers found a marijuana cigarette. Nothing else was found in the interior of the car. Unable to find the key to the locked trunk, the officers questioned defendant and Ms. Harrington as to its whereabouts. Both replied that they did not know where the key was. Ms. Harrington's purse was again searched and the key was found therein. Opening the trunk, Sgt. Gilfour discovered four plastic garbage bags. Based on his prior experience, Sgt. Gilfour surmised that the bags contained bricks of marijuana and thus ordered the vehicle to be towed to police headquarters for completion of the search. At the police station, the bags were opened and found to contain approximately ninety-nine pounds of marijuana. Defendant and Ms. Harrington were then formally placed under arrest for possession with intent to distribute marijuana.
The inventory form listing all items found in the vehicle was eventually completed at the police station. However, both officers testified that they did not ask defendant for consent to search the vehicle; nor was he asked if he would consent to waive his rights against the department in the event no search was undertaken. Defendant was asked if the car contained anything of value, to which he responded that he had already retrieved his personal belongings from the car. Furthermore, the officers each testified that, although they suspected that they would find contraband in the vehicle, they would have conducted the inventory search in any event in accordance with standard police procedure. Sgt. Gilfour candidly admitted that, while it was common knowledge among policemen that "inventory forms are used as a means to check the vehicles for any contraband or any illegal weapons or whatnot," the main purpose was to protect the valuables belonging to the occupants. He concluded by *581 stating: "Specifically, it's to protect the people's valuables, but also, I cannot deny that it's general knowledge that it's a means of checking the vehicle without a search warrant."
Through the testimony at the suppression hearing, defendant made an initial showing that a warrantless search and seizure occurred. Hence, the burden of proof shifted to the state to show affirmatively that the search and seizure were justified under one of the well-recognized exceptions to the warrant requirement of the fourth amendment to the federal constitution. State v. Schmidt, 359 So.2d 133 (La.1978); State v. Braud, 357 So.2d 545 (La.1978); State v. Franklin, 353 So.2d 1315 (La.1977). The state does not contend, nor do we find, that the search and seizure were justified under the exceptions of consent, probable cause plus exigent circumstances, or search incident to a lawful arrest. Rather, the state argues that the evidence was seized pursuant to a valid inventory search. We do not agree.
In South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the United States Supreme Court upheld police intrusions into automobiles impounded or otherwise in lawful custody where the process was aimed at securing or protecting the car and its contents. In that case, the car had been observed illegally parked for some time and thus was impounded. A search was conducted at the impound lot, out of the presence of the car's owner, pursuant to standard police procedure, which had as its purpose the inventorying and safeguarding of the vehicle's contents. The inventory itself was prompted by the presence in plain view of a number of valuables inside the car. Although the standard inventory included a search of the trunk, the trunk was not searched because it was locked.[2] Finding that the inventory followed standard police procedures and was not "a pretext concealing an investigatory police motive," the Court concluded that the conduct of the police was not "unreasonable" under the fourth amendment.
In State v. Jewell, 338 So.2d 633 (La. 1976), following the reasoning of Opperman, we held that true inventory searches of motor vehicles impounded for reasonable cause do not offend the prohibition of article 1, section 5 of our state constitution against unreasonable governmental searches, seizures, or invasions of privacy. However, in Jewell and other more recent cases, we found that the facts in each case did not support the conclusion that the police officer was conducting a search to safeguard the vehicle's contents, as contrasted with making a warrantless search for incriminating evidence, without probable cause to do so. The searches in these cases were held unreasonable and therefore unconstitutional. We reached these conclusions because of the presence of various factors indicating that the purported inventory searches were not reasonably restricted in scope so as to constitute true inventory searches. Such factors are present here.
First, the tow truck was called prior to ascertaining whether other arrangements could be made for the car. Second, the search of the shoulder bag and purse revealed marijuana, thereby admittedly arousing a suspicion in both officers that contraband would be found in the vehicle. Third, the actual search of the car was conducted at the arrest site rather than at the place of impoundment. Fourth, although defendant was present, the officers did not ask for his consent to a search of the vehicle; nor did they ask whether he would consent to a waiver of his rights against the department in lieu of a search. Moreover, when asked whether the car contained valuables, defendant responded that he had already retrieved his valuables from the car. In this regard, we have noted previously that
[t]he justification for the inventory search of the vehicle is ostensibly to protect the occupant of the vehicle against loss of his property or the law enforcement agency against the occupant's claim for failure to guard against such loss.

*582 This justification has a very hollow basis indeed, if the occupant disclaims that any valuables are involved and is willing to consent to the agency's failure to afford him such protection by an inventory search.
State v. Gaut, 357 So.2d 513, 516 (La.1978). Finally, the officers persisted in opening a locked trunk although defendant was unwilling for them to do so. In our opinion, the totality of these factors clearly indicates that the search in the instant case was not reasonably restricted in scope so as to constitute a true inventory search. The seizure of the marijuana was thus not justified under the inventory search exception to the warrant requirement. State v. Schmidt, supra; State v. Gaut, supra; State v. Rome, 354 So.2d 504 (La.1978); State v. Jewell, supra.
In sum, the state failed to meet its burden of showing that the search and seizure were justified under one of the well-recognized exceptions to the warrant requirement of the fourth amendment. Hence, the search and seizure of the marijuana were unconstitutional; the trial judge committed reversible error in denying defendant's motion to suppress the evidence.

DECREE
For the reasons assigned, the conviction and sentence are reversed, and the case is remanded for a new trial consistent with law and the views herein expressed.
SANDERS, C. J., and SUMMERS, J., dissent.
NOTES
[1] In determining whether the ruling on defendant's motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may consider all pertinent evidence given at the trial of the case. State v. Schmidt, 359 So.2d 133 (La. 1978); State v. Stewart, 357 So.2d 1111 (La. 1978); State v. Shivers, 346 So.2d 657 (La.1977); State v. Smith, 257 La. 1109, 245 So.2d 327 (1971); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967). We have reviewed the pertinent evidence given at the trial of the instant case. This evidence presents substantially the same facts and circumstances surrounding the search and seizure at issue as was indicated by the testimony of the witnesses at the hearing on the motion to suppress. Since the evidence adduced at trial does not affect the result we reach in the instant case, our relation of the pertinent facts is based only upon the testimony given at the suppression hearing.
[2] South Dakota v. Opperman, 428 U.S. 364, 380 n. 6, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).