STATE of Iowa, Appellee,

v.

Gary Joseph ROTH, Appellant.

No. 63741.

Supreme Court of Iowa.

May 13, 1981.

Jody A. Dible and Paul D. Miller, Woodbury County Public Defenders, for appellant.

Thomas J. Miller, Atty. Gen., John P. Messina and Douglas F. Staskal, Asst. Attys. Gen., and Patrick C. McCormick, Woodbury County Atty., for appellee.

UHLENHOPP, Justice.

This appeal presents the issue of the constitutionality of inventorying the contents of a motor vehicle which Woodbury County sheriff's personnel impounded.

Deputy Sheriff David Amick testified:

Q. In reference to your routine investigations, what is the standard operating procedure for a sheriff or a deputy in Woodbury County in a situation where a motor vehicle is to be transported back to the station after an arrest has been made? A. Anytime a vehicle is left in our custody for any time whatsoever, for the purposes of towing or whatever the purpose may be, when the vehicle is our responsibility, we inventory the vehicle for any content that may be of value in the vehicle, and this is signed by whoever receives it from us, usually the wrecker service. Therefore, any valuables are recorded and signed for should anything come up missing at a later date that we'll know what was in the vehicle at the time it was towed.

Q. Do you do this as a matter of course in every investigation that you make that involves a motor vehicle? A.

Anytime the vehicle is seized or towed by our department, it's the department policy that it will be inventoried.

Q. And is your inventory limited to items that are in plain view, or do you go beyond that? A. We go beyond that. We look anywhere that we think there could be anything of value placed. Many times we'll find a billfold containing money under the seat, or tools in the trunk or whatever. Anywhere we think that someone would have access to, say a wrecker driver or anybody else, we check for value.

Q. And do you list those items that you find on a form? A. Anything that's of value we do.

At about 3:00 a. m. on April 11, 1979, Deputy Sheriff Royce G. McGuire was on duty in a patrol car in a rural area. After observing a car containing two occupants, he "pulled it over" and stopped it. He testified at the subsequent suppression hearing:

Q. And what were your reasons for pulling the vehicle over? A. Okay. As I approached the City of Sloan from the east—I was westbound—I noted the vehicle coming from the Interstate going east on 75—or Highway 141. It approached the intersection of Highway 75, stopped at the stop sign, made a right turn, went approximately fifty to a hundred yards and made a U-turn, came back to the intersection and went east on 141, went approximately fifty to a hundred yards again, made another U-turn, came back to the Intersection and went north on Highway 75 through the city of Sloan.

Q. What were your reasons for pulling this car over? A. As I approached Highway 75 and started north, the vehicle was approximately 150 to 200 yards in front of me. As I followed it through the city of Sloan, it crossed over the center line, driving left of center approximately three times. And on the north edge of Sloan when it made corrective action to bring itself back into the north-bound lane, it went completely off of the traveled portion of the road onto the right-hand shoulder of the road.

Q. And what did that indicate to you, if anything? A. That the driver was either tired and sleepy, or possibly intoxicated.

Q. You then commenced to pull the vehicle over? A. That's correct.

McGuire observed and talked with the driver, administered field tests for intoxication, concluded that the driver was intoxicated, arrested him for driving while intoxicated, and placed him in the patrol car. McGuire then saw and talked with defendant Gary Joseph Roth, who was a passenger in and the owner of the car, smelled his breath, observed his eyes and balance, concluded that he also was intoxicated, arrested him for public intoxication, and placed him too in the patrol car. McGuire saw a partially empty bottle of whisky on the car seat, took possession of it, and later deposited it with the "I.D. Bureau" when he escorted the arrested men to the station.

McGuire testified further:

Q. And would it be a standard operating procedure in a factual situation as the one that we have here for your office to tow the vehicle in? A. Yes, it is. Anytime we make an arrest and we're unable to release the vehicle to somebody at the scene, then we're responsible for the vehicle and we have it towed for safekeeping.

Accordingly, McGuire radioed for a wrecker and for help. Deputy Amick responded to the call for assistance. McGuire told him to inventory the contents of the car and stand by it until the wrecker arrived.

Amick followed usual procedure in looking through the car for valuables, under the seat, on the floor, in the glove compartment, and in the trunk. Apparently the trunk lid on this car, like those on cars generally, automatically locks when latched, and is opened by a key rather than by a handle. Amick obtained the key for the trunk from the ignition where the occupants had left it. He testified:

Q. Deputy, would it be a correct statement, then, that at the time that you proceeded to check the trunk of the vehi-

cle out, that at that time you were not searching for criminal evidence? Would that be correct so far? A. That's correct.

Q. And that your search—your inventory was being performed merely to catalog and secure the contents of that vehicle? A. That's correct.

In taking inventory, Amick found nothing of value to list in the passenger compartment of the car. In the trunk he observed two items. One was a Craftsman tool box containing miscellaneous tools; he so listed it. The other was a paper sack to the right of the wheel well, containing about two pounds of marijuana. He took possession of this item and made a written report of it.

Amick stood by the car to protect it until the wrecker arrived. After turning the car over to the towing firm personnel, he delivered the marijuana together with the whisky to the I.D. Bureau.

The county attorney subsequently charged defendant with possession of marijuana with intent to deliver. Defendant moved to suppress the marijuana, contending that Amick conducted an unconstitutional search and seizure. After a hearing, the district court overruled the motion.

Defendant sought discretionary review of the district court order, which we granted. § 814.6(2), The Code 1979. We later transferred the case to the Court of Appeals, which reversed the district court order by a vote of three-to-two. The State applied to us for further review, and we granted the application. Our review of the district court order, like that of the Court of Appeals, is de novo. *Bettuo v. Pelton*, 260 N.W.2d 423, 425 (Iowa 1977).

■ I. *The Constitutional clause.* This search—and we will assume it was a search—was conducted without a warrant. Under the exclusionary rule, evidence obtained by law officers in violation of the Fourth Amendment to the United States Constitution is inadmissible in evidence in state as well as federal criminal trials. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961). That Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

■ Warrantless searches are unconstitutional if they are unreasonable and reasonableness depends upon the circumstances of the particular case. *Cooper v. California*, 386 U.S. 58, 59, 87 S.Ct. 788, 790, 17 L.Ed.2d 730, 732 (1967). They are per se unreasonable unless they fall within carefully drawn exceptions to the warrant requirement. *Camara v. Municipal Court*, 387 U.S. 523, 528–29, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930, 935 (1967).

II. *Motor vehicle inventory exception.* The State does not seek to justify the present inventory of the contents of the vehicle on the ground that probable cause existed. Neither the deputies nor the Attorney General claims probable cause existed to search for contraband; on the contrary, the officers disclaim any intent to look for drugs. *See State v. Holderness*, 301 N.W.2d 733 (Iowa 1981). Nor is this a case in which an officer opened locked personal luggage without a warrant although he had time and opportunity to obtain one. *See State v. Schrier*, 283 N.W.2d 338 (Iowa 1979). This case is presented by the State as coming within the motor vehicle inventory exception.

Differing from the probable cause and personal luggage cases, the impounded motor vehicle situation presents a practical problem for law officers. As in this case, officers must frequently remove occupants from vehicles at night on criminal charges. The vehicles can hardly be left unattended; they may be broken into or stripped. If the officers call third parties to tow in the vehicles, they run the risk that contents of the passenger and trunk compartments may disappear in the process, or even after the

vehicles are stored. They also run the risk of claims that they themselves stole items from the compartments. The officers thus have the problem of how to protect themselves and their governmental units from civil liability. The former days are no more when the officers and their governmental units could interpose an absolute defense simply from the performance of a governmental function. *See Franks v. Kohl*, 286 N.W.2d 663, 666–71 (Iowa 1979) (liability of public officers); chs. 25A, 613A, The Code (governmental tort liability).

The United States Supreme Court took a practical approach to this problem in *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), and *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In both cases the Court brought out the practical problems we have described and found the particular searches to be reasonable under the circumstances. *Dombrowski* involved a variation of the situation; the officer believed the vehicle might contain a handgun which some third person might obtain and use. *Opperman* involved an inventory of the contents of a car which was twice ticketed for overparking within a single period. An officer observed a watch and other articles in the car. He thereupon had the car unlocked, and he inventoried its contents. In so doing, the officer came across marijuana in the unlocked glove compartment. The language used by the Court is quite broad, at least for the case in which officers follow standard procedures in taking inventory of the contents of impounded vehicles. Thus see *id.* at 373, 96 S.Ct. at 3099, 49 L.Ed.2d at 1007: "In applying the reasonableness standard adopted by the Framers, this Court has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents."

Justice Powell was one of the five-justice majority in *Opperman*. He filed a concurring opinion. We do not understand, however, that he questioned the Court's opinion. Rather, he gave *additional* reasons for the result. His introductory statement was this: "While I join the opinion of the Court, I add this opinion to express additional views as to why the search conducted in this case is valid under the Fourth and Fourteenth Amendments." *Id.* at 376, 96 S.Ct. at 3101, 49 L.Ed.2d at 1009. We thus have an opinion joined in by five justices upholding an inventory search of an impounded motor vehicle.

■ III. *Circumstances here.* This appears to be a classic case of a proper inventory of a car. The sheriff had an established policy requiring an inventory of valuables if the car was impounded and not released to relatives or others of responsibility. This car was operated erratically, and Deputy McGuire properly stopped it. He properly took charge of the car after he arrested the occupants for intoxication. He properly directed, and Deputy Amick properly executed, an inventory of the contents of the car. The inventory was not taken to search for contraband or other incriminating evidence, but for self-protection before the car was delivered into the hands of a third person.

Defendant endeavors to distinguish *Dombrowski* and *Opperman* by their details, but the present facts fall well within the principle of those decisions. We do not regard the circumstance of the locked trunk to be a distinguishing factor of substance. The same reasons which impel officers to look through a locked or unlocked passenger compartment of a car—on the floor, beneath the seat, in the glove compartment—also impel them to inventory the contents of the trunk. Locked trunks are not impenetrable by third persons, and officers should be allowed to seek some protection against future lawsuits equally in the cases of the trunk and the passenger compartments. Moreover, the potential for lawsuits is not only on allegations that third persons stole from the trunk, but also on allegations that the police themselves did so. An inventory of personal property in the parts of the car where such property would be carried should afford the police some protection against spurious claims.

We agree with the statement of the Wisconsin Supreme Court regarding locked and unlocked car trunks, glove compartments, and other compartments where personal effects may be placed, in *State v. Prober*, 98 Wis.2d 345, 354–355, 297 N.W.2d 1, 6–7 (1980):

> To exclude these kinds of compartments from the scope of inventory searches would clearly thwart the first stated objective of protecting the property itself while it is in custody. It is a meritless argument to say that the owner of the car was satisfied with the security offered by these compartments because the storage of a vehicle at a police storage yard for an indeterminate length of time was not likely to be the sort of circumstances the owner had in mind in storing valuables in the car. Even more clearly, the second purpose for these searches, protection of the police against claims of loss, is not served if police do not inventory the entire contents of the vehicle. Police cannot reasonably be expected to defend against claims of loss, whether legitimate or false, reasonable or unreasonable, if they are not permitted to catalog what they took into custody. Moreover, a car owner inclined to make a false claim could be expected to base the claim on property missing from an area the police were not permitted to search. Finally, the third purpose, protection of the police from potential danger, can only be served by allowing police to inventory the contents of automobile trunks and other compartments. Whether the potential danger is a weapon which, if stolen, could pose a serious safety threat, explosives or even a leaking spare gasoline container threatening to ignite the vehicle, it can be averted only by permitting police to discover these before the potential harm materializes.

■ Some decisions disapprove inventory trunk searches. Illustrative are *United States v. Wilson*, 636 F.2d 1161, 1165 (8th Cir. 1980); *United States v. Lawson*, 487 F.2d 468, 475 (8th Cir. 1973) (predates *Opperman*); *State v. Hatfield*, 364 So.2d 578, 580–81 (La.1978); *Manalansan v. State*, 45 Md.App. 667, 670–74, 415 A.2d 308, 310–12 (1980); *State v. Goff*, W.Va., 272 S.E.2d 457, 459–62 (1980). On the other hand, a number of decisions approve inventory searches of the trunks of impounded vehicles made under standing rules. Among them, in addition to *Prober*, are *United States v. Staller*, 616 F.2d 1284, 1288–90 (5th Cir.), *cert. denied*, ── U.S. ──, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980); *United States v. Edwards*, 577 F.2d 883, 893–95 (5th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978); *United States v. Martin*, 566 F.2d 1143, 1144–45 (10th Cir. 1977); *Cabbler v. Superintendent, Virginia State Penitentiary*, 528 F.2d 1142, 1146–47 (4th Cir. 1975), *cert. denied*, 429 U.S. 817, 97 S.Ct. 60, 50 L.Ed.2d 77 (1976); *United States v. Gravitt*, 484 F.2d 375, 381 (5th Cir. 1973), *cert. denied*, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974); *United States v. Barnes*, 443 F.Supp. 137, 143 (S.D.N.Y. 1977); *United States v. Balanow*, 392 F.Supp. 200, 201–02 (N.D.Ind.1975), *aff'd*, 528 F.2d 923 (7th Cir. 1976); *United States v. Gerlach*, 350 F.Supp. 180, 182–83 (E.D. Mich.1972); *People v. Meeks*, 194 Colo. 214, 216–17, 570 P.2d 835, 837–38 (1977); *People v. Trusty*, 183 Colo. 291, 295–96, 516 P.2d 423, 425 (1973); *State v. Gwinn*, 301 A.2d 291, 293–94 (Del.1972); *Griffin v. State*, Ind.App., 372 N.E.2d 497, 499–501 (1978); *State v. Wallen*, 185 Neb. 44, 46–47, 173 N.W.2d 372, 374, *cert. denied*, 399 U.S. 912, 90 S.Ct. 2211, 26 L.Ed.2d 568 (1970); *State v. Roberson*, 156 N.J.Super. 551, 557, 384 A.2d 195, 198 (1978) ("The police are just as exposed to claims of lost or stolen property from the trunk as from any other part of the car."); *State v. Ruffino*, 94 N.M. 500, 502, 612 P.2d 1311, 1313 (1980) ("To forbid entry into trunks as part of an inventory search would frustrate the very purpose of the inventory, since the trunk is a likely place for valuables to be stored."); *State v. Vigil*, 86 N.M. 388, 391, 524 P.2d 1004, 1006 (Ct.App.), *cert. denied*, 86 N.M. 372, 524 P.2d 988 (1974), *cert. denied*, 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1975); *People v. Prator*, 93 Misc.2d 303, 307–08, 402 N.Y. S.2d 739, 742 (Dist.Ct.1978); *People v. Kern*,

67 Misc.2d 495, 497–98, 324 N.Y.S.2d 442, 445 (Crim.Ct.1971); *State v. Lemacks*, S.C., 268 S.E.2d 285, 286 (1980); *Capps v. State*, 505 S.W.2d 727, 729 (Tenn.1974) ("An inventory of the contents of the car would be meaningless without an accounting of items in the trunk."); *Schaum v. Commonwealth*, 215 Va. 498, 500–01, 211 S.E.2d 73, 74–75 (1975); *see United States v. Wade*, 564 F.2d 676, 676–77 (5th Cir. 1977); *Roush v. State*, 203 So.2d 632, 633–34 (Fla.App.1967); *Highland v. State*, 144 Ga.App. 594, 594–95, 241 S.E.2d 477, 477–78 (1978); *Pierce v. State*, 134 Ga.App. 14, 14–15, 213 S.E.2d 162, 163 (1975); Annot., 48 A.L.R.3d 537, 577–80 (1973). These decisions appear to us to be more consonant with the rationale of *Opperman.*

Defendant challenges the search under the Iowa Constitution as well as the United States Constitution, but we see no reason to impose a different rule under the state constitution. *See State v. Davis,* 304 N.W.2d 432, 434 (Iowa 1981) ("The Supreme Court of Iowa is the final arbiter of the meaning of the Iowa Constitution, but when the federal and state constitutions contain similar provisions, they are usually deemed to be identical in scope, import, and purpose.").

We have no occasion to try to anticipate the outer limits which the United States Supreme Court may impose on the inventory exception, for the circumstances of this case clearly bring it within that exception. We do not, for example, have a case in which Amick came upon latched personal luggage in the trunk, and opened it. The Wisconsin Supreme Court distinguished such cases in *Prober*, 98 Wis.2d at 355–356, 297 N.W.2d at 7:

Having ruled that Officer Szombathelyi could legally open the defendant's car trunk for purposes of conducting an inventory, we must now decide whether the search of the defendant's purse, found inside the trunk, was also within the permissible scope of that inventory. For the reasons set forth in *McDougal*, we conclude that it was not. In that case we said:

"To most people the contents of their locked suitcases or traveling bags are or can be extremely personal. To have these items examined and handled by strangers can cause embarrassment and humiliation. It is this type of invasion into one's privacy that our constitutions sought to prohibit." 68 Wis.2d [399] at 413–14, 228 N.W.2d [671] at 678.

This prohibition extends not just to locked suitcases in car trunks but to all closed or sealed containers, locked or unlocked found within the vehicle.

In recognizing that there is a greater expectation of privacy in closed or sealed containers found inside a vehicle than there is in a vehicle itself, we are balancing the need of the government (here, those relating to inventory searches) against the right of people to be free of warrantless intrusions into their personal effects. The balance tips in favor of the privacy of personal effects because the purpose of an inventory can be adequately served by inventorying a container as a closed unit. It is thereby secure from theft, and exposure to claims of loss is reduced. *But see: State v. McDougal*, 68 Wis.2d at 415–16, 228 N.W.2d 671 (R. Hansen, J., dissenting). Therefore, in conducting an inventory search of a vehicle, police officials may not open or search the contents of closed containers which could alternatively be removed from the vehicle and inventoried as a unit.

*See also United States v. Bloomfield*, 594 F.2d 1200, 1202-03 (8th Cir. 1979); *Gwinn*, 301 A.2d at 293–94.

Deputy Amick described the receptacle holding the marijuana as a "brown paper bag." If, as we hold, Amick could lawfully inventory the contents of the trunk, could he lawfully look into the paper bag for valuables or was the bag of the nature of a locked or latched suitcase, briefcase, travel trunk, or similar container?

■ The question is whether a person who places items in a paper bag such as this one has a *reasonable expectation of privacy*

in doing so which would require an officer, in taking inventory of valuables, to have grounds for a warrant and to obtain a warrant before looking into the bag. *See Arkansas v. Sanders*, 442 U.S. 753, 761, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235, 243 (1979).

We think that so to hold would extend "expectation of privacy" to an unreasonable extent. A person normally expects privacy when placing items in a suitcase, briefcase, or travel trunk, but hardly so when merely placing them in a paper bag. See the following decisions upholding car trunk inventories: *Staller*, 616 F.2d at 1288 (plastic bag containing counterfeit bills, also shopping bags from stores "each bag containing one or two small items of merchandise"); *Barnes*, 443 F.Supp. at 141 (bags of counterfeit bills in shopping bag); *Gerlach*, 350 F.Supp. at 183 (counterfeit bills in box); *Ruffino*, 94 N.M. at 501, 612 P.2d at 1312 ("The items in the trunk included grocery bags, clothing, a radio, repair items and a twelve-gauge shotgun with shells."); *Vigil*, 86 N.M. at 390, 524 P.2d at 1006 ("They found a brown paper bag in the trunk which, upon inspection, was found to contain twenty-one packages of suspected marijuana.").

We thus uphold the district court order overruling the motion to suppress, and return the case to district court for further proceedings.

DECISION OF COURT OF APPEALS VACATED.

ORDER OF DISTRICT COURT AFFIRMED.

REMANDED.

All Justices concur except McCORMICK and ALLBEE, JJ., who dissent.

McCORMICK, Justice (dissenting).

I would affirm the Court of Appeals.

The question here is whether the warrant clauses of the Federal or Iowa Constitutions were violated by the warrantless police search of a closed paper sack in the locked trunk of defendant's impounded automobile. I believe the search was unlawful under both constitutions.

I. *The Federal Constitution.* As the court recognizs, the authorities construing the Fourth Amendment of the United States Constitution are divided concerning whether a locked automobile trunk may always be entered during a routine inventory search. Such a blanket right is plainly not authorized under *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Justice Powell recognized this in *South Dakota v. Opperman*, 428 U.S. 364, 377, n.2, 96 S.Ct. 3092, 3101, n.2, 49 L.Ed.2d 1000, 1010 (1976) (Powell, J., concurring) (distinguishing *Dombrowski* on the basis that an officer in that case reasonably believed the trunk contained a gun). Moreover, I do not believe *Opperman* recognizes such a right. Even if it did, the right could not include authority to open a closed container when its exterior does not disclose its contents and its incriminating nature is not immediately apparent.

A. *Reasonableness of searching the locked trunk.* When a Supreme Court opinion does not have the unqualified assent of five members, the holding of the Court may be viewed as the position taken by the members who concurred on the narrowest grounds. *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260, 266 (1977). Although Justice Powell joined the opinion in *Opperman*, his separate opinion expresses his understanding of the holding. Because the holding commanded only five votes, his view is authoritative.

Among other observations relating to the circumstances in *Opperman*, Justice Powell noted that the standard inventory at issue in that case did not include opening a vehicle trunk if it was found to be locked. 428 U.S. at 380, n.6, 96 S.Ct. at 3102, n.6, 49 L.Ed.2d at 1011. He also recognized that the reasonableness of a particular inventory search would depend on the circumstances of the case: "The absence of a warrant will not impair the effectiveness of post-search review of the reasonableness of a particular inventory search." *Id.* at 383, 96 S.Ct. at 3104, 49 L.Ed.2d at 1014. Indeed, the majority opinion recognized that an inventory search must be reasonable in scope. 428

U.S. at 376, n.10, 96 S.Ct. at 3100, n.10, 49 L.Ed.2d at 1009.

I would hold that the search was unreasonable in scope in the present case. A similar conclusion was reached in analogous circumstances in *United States v. Wilson,* 636 F.2d 1161 (8th Cir. 1980). After stopping an automobile and arresting Wilson for traffic offenses, an officer decided to take him to the police station. Because he believed Wilson was incapable of driving the vehicle to the station, the officer decided to have it towed by a private towing service to a private towing yard. Before it was towed, the officer conducted a routine inventory search of the vehicle, including its locked trunk. Firearms were found in the trunk, and Wilson unsuccessfully moved to suppress that evidence in subsequent weapons offense prosecutions. On appeal, the court found the decision to have the vehicle towed was justified but held the search of the locked trunk was unreasonable:

> We hold, therefore, that the needs of the Government in conducting an inventory search may be ordinarily accomplished without the serious intrusion into the locked trunk of an automobile. Absent a special justification for a more extensive intrusion, the routine search of a locked automobile trunk is unreasonable under the fourth amendment.

*Id.* at 1165.

In contrasting the circumstances with those in *Opperman,* the court said:

> In *Opperman,* the Court noted that the car's owner "was not present to make other arrangements for the safekeeping of his belongings" and that the "inventory itself was prompted by the presence in plain view of a number of valuables inside the car...." Here, by contrast, the police offered no special justification for the search and Wilson was present during the search and capable of making other arrangements to safeguard his property. The police could have protected their interests as well as Wilson's without intruding into the privacy of the automobile trunk. The police, for example, could have asked for Wilson's consent to search

the car, or, in the alternative, requested that Wilson arrange to remove the car himself or relieve police from liability for claims. In addition, the police could have inventoried the trunk as a single unit.... [U]nit inventories might better serve the interests of the Government by minimizing "the possibility of loss and the possibility of false claims against police by the owner."

*Id.* at 1165–66. In distinguishing a locked trunk from the rest of the automobile, the court observed that a locked trunk is not subject to the same level of visual intrusion as the vehicle interior and is more likely to be the repository of private effects, implicating a greater expectation of privacy. *Id.* at 1164. The court's reasoning is equally persuasive in the present case. Other decisions which impose limitations on the scope of inventory searches include *State v. Hatfield,* 364 So.2d 578, 580–81 (La.1978); *Manalansan v. State,* 45 Md.App. 667, 670–74, 415 A.2d 308, 310–12 (1980); *State v. Goff,* W.Va., 272 S.E.2d 457, 459–62 (1980).

B. *Reasonableness of searching the closed sack.* The *Opperman* principle converges in this case with the principle in *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). The question in *Sanders* was whether, in the absence of exigent circumstances, police are required to obtain a warrant before searching luggage taken from an automobile properly stopped and searched for contraband. The Court said that the right to search an automobile does not carry with it the right to search everything found in it. *Id.* at 762–63, 99 S.Ct. at 2592, 61 L.Ed.2d at 244. It also said "a suitcase taken from an automobile stopped on the highway is not necessarily attended by any lesser expectation of privacy than is associated with luggage taken from other locations." *Id.* at 764, 99 S.Ct. at 2593, 61 L.Ed.2d at 245. Consequently the Court held that "the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations." *Id.* at 766, 99 S.Ct. at 2594, 61 L.Ed.2d at 246.

Thus, under *Sanders*, the right to search items found during lawful automobile searches is independently subject to fourth amendment constraints.

We are now confronted with a problem suggested by Justice Blackmun in his dissent in *Sanders*:

> Or suppose the arresting officer opens the car's trunk and finds that it contains an array of containers—an orange crate, a lunch bucket, an attache case, a duffle-bag, a cardboard box, a backpack, a tote-bag, and a *paper bag*. Which of these may be searched immediately, and which are so "personal" that they must be impounded for future search only pursuant to a warrant?

*Id.* at 772, 99 S.Ct. at 2597, 61 L.Ed.2d at 250. (emphasis added). We addressed an analogous problem involving a knapsack in *State v. Schrier*, 283 N.W.2d 338 (Iowa 1979). We said: "The answer appears to turn on whether, under the circumstances, defendant had a reasonable expectation of privacy regarding the contents." *Id.* at 346.

We also noted the remark of the Court in *Sanders*: " 'Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance.' " *Id.* The remark in *Sanders* included these additional statements:

> Similarly, in some cases the contents of a package will be open to "plain view," thereby obviating the need for a warrant. *See Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, 1068 (1968) (per curiam). There will be difficulties in determining which parcels taken from an automobile require a warrant for their search and which do not. Our decision in this case means only that a warrant generally is required before personal luggage can be searched and that the extent to which the Fourth Amendment applies to containers and other parcels depends not at all upon whether they are seized from an automobile.

442 U.S. at 764, n.13, 99 S.Ct. at 2593-94, n.13, 61 L.Ed.2d at 245.

Under the *Sanders-Schrier* test, defendant plainly had an expectation of privacy in the contents of the paper sack in the present case. It was closed and kept in the locked trunk of his automobile. Unlike a kit of burglar tools or a gun case, its contents could not be inferred from its outward appearance.

Because the *Sanders* court said the extent to which the fourth amendment applies to containers and other parcels does not depend upon whether they are seized from an automobile, the "inventory search exception" to the warrant requirement does not justify the search of the paper bag. Furthermore, because the incriminating nature of the contents was not readily apparent, the plain view doctrine is inapplicable. *See State v. Davis*, 228 N.W.2d 67, 71 (Iowa 1975). Consequently I would hold that the search of the sack infringed defendant's fourth amendment rights. *See United States v. Bloomfield*, 594 F.2d 1200 (8th Cir. 1979) (knapsack); *United States v. Hill*, 458 F.Supp. 31 (D.D.C.1978) (flight bag); *State v. Daniel*, 589 P.2d 408 (Alaska 1979) (brief-case); *People v. Dennison*, 61 Ill.App.3d 473, 18 Ill.Dec. 756, 378 N.E.2d 220 (1978) (tool box). Thus, even if the search of the locked trunk did not exceed the scope of a lawful inventory search, the search of the closed paper sack was unlawful.

II. *The Iowa Constitution.* We have previously exercised our prerogative to afford greater protections under the Iowa Constitution than are provided under similar provisions of the Federal Constitution. *See, e. g., Bierkamp v. Rogers*, 293 N.W.2d 577, 579 (Iowa 1980). Even if the court were right that the fourth amendment was not violated in this case, I would hold that Ia.Const.Art. I, § 8, was violated. A similar course was taken by the South Dakota Supreme Court in *Opperman* after remand. *See State v. Opperman*, 247 N.W.2d 673 (S.D.1976).

Iowa has a proud tradition of concern for individual rights. We should not be reluctant to show greater sensitivity to the

rights of Iowans under our constitution than the Supreme Court accords to their rights under the Federal Constitution. The reasons for doing so are persuasive in this case.

ALLBEE, J., joins this dissent.