336 So.2d 855 (1976)
STATE of Louisiana
v.
Arthur Lee TAYLOR.
No. 57427.
Supreme Court of Louisiana.
June 21, 1976.
Rehearing Denied September 10, 1976.
*856 R. Perry Pringle, Johnston, Thornton, Pringle & Greer, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., William L. Goode, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
On May 5, 1975 the grand jury of Caddo Parish returned a true bill charging that on April 21, 1975 Arthur Lee Taylor committed second degree murder of Annie Mae Allison. Taylor was tried before a jury on October 20 and 21, 1975, found guilty as charged and sentenced to life imprisonment.
Four assignments of error were perfected to rulings of the trial judge during trial.

I.
Assignments of errors 1 and 2 are considered together for the purpose of argument. These assignments involve the overruling of defense objections to the State's witnesses testifying to inculpatory statements made by the defendant to police officers.
At approximately 10:30 on the evening of April 22, 1975 Taylor turned himself in at the Caddo Parish jail. Detectives Brann and Strange placed him under arrest. They then transferred him to the detective office of the Shreveport Police Department. Thereafter he was jailed and advised of his Miranda warnings, and he signed a card to that effect. No interrogation was conducted, however, because Taylor "had been drinking." Detective Snell was with Brann at the time.
The next night at 10:30 Brann again talked to Taylor, at which time he again advised Taylor of his rights in the presence of Detective Snell, reading the rights from the card. At that time he asked Taylor if he wanted to make a statement. Thereupon Taylor said he was at the victim's house and an argument over money took place. During the argument, according to Taylor, the victim picked up a butcher knife and cut him on the hand. Taylor then took the knife from her, stabbed her a couple of times and left.
The defense position is that Section 451 of Title 15 of the Revised Statutes requires that before what purports to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under influence of fear, duress, intimidation, menaces, threats, inducements or promises. This requirement, coupled with the pre-interrogation warnings and waiver required by the decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), it is argued, imposes a heavy burden upon the State to demonstrate that a defendant did knowingly and intelligently waive his privilege against self-incrimination and his right to appointed counsel prior to the introduction of a confession. In this connection the defense contends that the advice of rights form, signed by Taylor on the night of April 22 while he was intoxicated, could not serve to satisfy the requirements of the Miranda rule. Moreover, it is claimed, even if the oral warning given to Taylor the next morning when he was undoubtedly sober would suffice *857 to inform Taylor of his rights, there was no clear waiver of these rights by Taylor.
Detective Brann testified regarding the card from which he read the Miranda warnings to Taylor on the night of April 23 as follows:
"It says you are under arrest for your part in the offense of second degree murder. I hereby notify you that you have a right to remain silent and you are not required to make any statement unless you want to do so voluntarily. Anything you say will be used against you in a court of law and you also have a right to consult with your attorney and to have him present with you. If you cannot afford an attorney one will be appointed to represent you. While you are not required to make any statement you may waive these rights just explained to you and you are given the privilege of saying anything you want to about this case. Now with this understanding and waiving these rights just explained to you, do you wish to make a statement and tell how this happened."
On that occasion Taylor said he understood his rights and would give them a statement.
While we agree that the State's burden to establish the free and voluntary character of a confession is a heavy one, the advice given to Taylor by Detective Brann in the presence of Detective Snell adequately fulfilled the pre-interrogation warnings required by the Miranda decision, and the waiver of those rights is implicit from Brann's recitation, coupled with Taylor's statement immediately following.
Some conflict in the testimony is apparent relative to the Miranda warnings on the second occasion and whether these warnings were read to Taylor or simply recited by Detective Brann. Detective Snell's testimony on that question was accepted by the trail judge. Snell said: "Now, we did read them off of the card. I will have to stay that. We didn't get him to sign that but we read them off of the card." This testimony was repeated on cross-examination. On the other hand Brann, whose memory did not seem to be as good, said he recited the Miranda warnings. But whether the warnings were read or recited is unimportant. What is important is that Taylor was informed of his rights and understood them. This much is not controverted.
It is also noted there is no showing that Taylor's condition of intoxication on the night of April 22 was such that he could not understand the Miranda warnings contained on the card which he signed and on which he inserted the date of signing in his own hand.
In addition, the voluntariness requirements of Section 451 of Title 15 were satisfied by the testimony of both officers who were present when Taylor gave the confession or inculpatory statement. Both testified that Taylor fully understood his rights; no one coerced or forced him to make the statement; and he was not threatened. There is no evidence to the contrary.

II.
Assignment No. 3 is a claim that the court erred in allowing the State's attorney, over defense objection, to introduce defendant's confession without giving prior written notice to defense counsel of his intention to do so.
Two attorneys represented the defendant during the course of this prosecution. The first was Roland McKneely. While he was representing the defendant, on July 22, 1975, the district attorney's office filed a notice of intention to use oral statements and/or admissions made by Taylor to Snell and Brann on April 23, 1975. Prior to that date, on July 1, 1975, pursuant to an order of court in response to a request for particulars, information was supplied relative *858 to the circumstances surrounding the confession. This advice was contained in a letter from the District Attorney to defense counsel McKneely, which was filed in the record.
McKneely then withdrew as defense counsel due to the fact that he had accepted a position with the District Attorney's office in Bossier Parish, and R. Perry Pringle was appointed on July 29 to carry on Taylor's defense.
The narrow issue presented is whether the notice requirements of Article 768 of the Code of Criminal Procedure are met. Present counsel contends he has received no notice and, therefore, article 768 has not been complied with. The Article provides:
"If the state intends to introduce a confession or inculpatory statement is evidence, it shall so advise the defendant in writing prior to beginning the State's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."
In ruling on this question the trial judge was of the opinion the notice is required to be given to defendant, not his counsel, and defendant was effectively given notice on two occasions: first, when the July 1 letter was addressed to counsel who was at that time representing defendant and, second, when the July 22 notice was filed in the record and brought to the attention of counsel representing defendant. The trial judge was of the opinion that Article 768 did not require that these notices be repeated and served on Attorney Pringle after he became counsel in the case. Aside from the reasons assigned by the trial judge, which are correct, the Assistant District Attorney stated into the record that Attorney Pringle had access to the record from the time of his appointment on July 29 to the time of the trial on October 21. He stated, also, that prior to trial on two occasions he had discussed with Pringle the fact that Taylor had made an inculpatory statement and the contents of that statement in complete detail. This is not denied.
This assigment is without merit.

III.
At the conclusion of the trial, counsel for defendant requested that the trial judge prohibit the children of the deceased from being present in the courtroom during closing arguments and during the judge's charge to the jury. When the request was denied defense counsel objected; the objection was overruled, and this ruling is the subject of the fourth assignment of error.
The record reflects that the four children of the victim were present in the courtroom during closing arguments and the charge to the jury. The defense contention is that the presence of the children unduly inflamed the jury to the prejudice of defendant, for two of them had testified and the jury was aware that they were the children of the victim. One of the children was six years old.
Defense counsel frankly concedes that he could not point to any precise authority to support his position. Nevertheless he likeens this situation to the display of brutal or gruesome photographs, or bloody murder weapons, or garments. He refers the Court to State v. Morris, 245 La. 175, 157 So.2d 728 (1963), where we held in a case involving gruesome color sides depicting an autopsy that the test of admissibility in such cases is whether the probative value of the photographs outweigh their probable prejudicial effect.
This rule of weighing the probative value of evidence against its prejudicial effect, the defense contends, can be applied to the circumstances of this case where the four children were displayed in close proximity to the jury.
There is no showing that these children made any emotional outburst or display. *859 They had a right to be there and the prejudicial effect of their presence in the courtroom, if any, has not been shown to outweigh their right to be in attendance at the trial. Their existence was a fact of the case already known to the jury.
There is no merit to this bill.
For the reasons assigned, the conviction and sentence are affirmed.