357 So.2d 513 (1978)
STATE of Louisiana, Respondent,
v.
Joe Nathan GAUT, Relator.
No. 60748.
Supreme Court of Louisiana.
April 10, 1978.
*514 Frank E. Brown, Jr., Piper & Brown, Shreveport, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Tommy J. Johnson, Dale G. Cox, Asst. Dist. Attys., Shreveport, for plaintiff-respondent.
TATE, Justice.
We granted certiorari, 351 So.2d 1210 (1977), to review the trial court's denial of a motion to suppress certain evidence seized as the result of an illegal search.
The defendant Gaut is charged with possession of marijuana, La.R.S. 40:966 D (1973), and with possession of heroin with intent to distribute, La.R.S. 40:967 B(1). The marijuana and heroin were seized as the result of a search of Gaut's automobile after he was stopped and arrested for driving while intoxicated, La.R.S. 14:98.

*515 (1)
The issue before us thus concerns the warrantless search of the vehicle of a motorist stopped for a traffic violation. The motorist did not consent to the search but instead requested that his passenger be permitted to drive the vehicle away after the motorist's arrest. The arresting officer nevertheless persisted in making an intensive search of the vehicle.
For reasons to be elaborated below, we find that the search so conducted does not fall within the limited "inventory" searches, which for adequate justification and limited purpose, are sometimes held to be reasonable, although without a warrant.

(2)
In the instance before us, the "inventory" search was allegedly conducted pursuant to a standard policy of the state police. The departmental regulation was not introduced into evidence.
However, according to the testimony of the officers, the policy requires a state trooper to make an inventory search at the scene, before releasing the vehicle to a nonpolice wrecker, when its operator is arrested or when the vehicle is found abandoned. The purpose of the inventory, for which standard forms are used, is to protect the owner or custodian of the vehicle against loss of valuables stored therein, and to protect the state police against claim for such loss.
In the instant case, prior to the stop of the vehicle at about 2:30 a. m., the arresting trooper had noticed Gaut's vehicle, proceeding at 45 m. p. h. on an interstate highway, weaving somewhat onto the shoulder. The trooper used his flashing lights and stopped Gaut's vehicle when it was halfway down an exit ramp from the interstate. As stopped, it was well on the shoulder and did not obstruct traffic.
The trooper noticed Gaut's unsteadiness as he left the vehicle, as well as the smell of alcohol about his person. Upon conducting a "field sobriety test", the trooper determined that he had probable cause to arrest Gaut for driving while intoxicated. He did so, handcuffing Gaut and placing him in the rear of the police vehicle.
The policeman admitted that he did not ask for Gaut's consent to make the subsequent search of the vehicle. He admitted, further, that Gaut had asked him to turn the car over to his passenger, Stancell, and then (when the trooper refused this request) to leave the automobile where it was, parked on the shoulder out of the way of traffic.
At the hearing on the motion to suppress, the police officer ascribed his reason for refusing the passenger Stancell permission to drive the car to his belief that Stancell also smelled of whiskey. No bottles were found in the interior of the car, and there is no testimony as to indicia of Stancell's intoxication other than the officer's trial testimony as to the alleged smell. The officer did not conduct any field sobriety test of Stancell, for instance, nor did he at the time inform Gaut or Stancell of this alleged reason for not turning the vehicle over to Stancell.
Stancell himself testified that, due to a stomach condition, he had not been drinking alcohol for several months. He had accompanied Gaut, his partner in a discotheque, to a night club for business purposes; but (he testified) he had drunk only soft drinks during the conversations there.
In any event, the trooper told Stancell to sit in the police vehicle while he searched the vehicle. He found a pistol (which Gaut was entitled to possess) and, then, some marijuana in an ashtray. Although the ashtray was apparently on the driver's side, the officer then arrested and handcuffed Stancell also (for constructive possession of marijuana). No charges were ever filed against Stancell as a result of this arrest.
The officer then went back to Gaut's vehicle "to complete my inventory." He testified, in explanation: "I was sure there was something in there. . . . I looked underneath the seat on the driver's side.. . . [By chance,] my knee hit the dash right there by the steering wheel, and I heard something rattle and it sounded unnatural." *516 The officer then searched underneath the dashboard and found a plastic flap, which contained a brown medicine bottle. In the bottle were some pills, which upon subsequent chemical analysis turned out to be heroin.

(3)
Under the circumstances shown, the search was conducted in violation of Article 1, Section 5, Louisiana Constitution of 1974. This provides: "Every person shall be secure in his person, property, communications, houses, papers and effects against unreasonable searches, seizures, or invasions of privacy * * *." Within the prohibition of this article are all searches without probable cause; as well as warrantless searches, in general, except in limited and exigent circumstances established by well-recognized traditional exceptions. State v. Breaux, 329 So.2d 696 (La.1976).
Nevertheless, in the crowded and mobile society of today, the practical exigencies of law-enforcement have sometimes been held to justify limited invasions of privacy, restricted to their limited purpose, even though based on something less than probable cause to believe that a crime has actually been or is about to be committed. The so-called "inventory" search of motor vehicles necessarily and lawfully impounded by the police, when the inventory is necessary under the exigencies of the situation, is an instance. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); State v. Jewell, 338 So.2d 633 (La. 1976).
However, in these exceptional cases, the searches so conducted must be strictly scrutinized and limited to the exceptional restricted purpose for which narrowly authorized, see State v. Rome, 354 So.2d 504 (La.1978) (inventory search); and State v. Smith, 347 So.2d 1127 (La.1977) (stop and frisk), lest they be used as a subterfuge by governmental agents to conduct a warrantless search without probable cause.

(4)
Guided by these constitutional injunctions, and by the above-stated principles with regard to inventory searches, we find that the "inventory" search herein conducted was unreasonable and that it represents an unconstitutional invasion of individual right. As outlined above, the arresting officer, claiming justification by a departmental regulation, over the protest of a motorist arrested for a misdemeanor, proceeded to make an intensive search of his vehicle, making little if any effort at the time to permit the vehicle to be safeguarded by the motorist's private efforts (such as through the assistance of his passenger) rather than by instead officially impounding it (seemingly for the primary purpose of conducting an "inventory" search of it).
The justification for the inventory search of the vehicle is ostensibly to protect the occupant of the vehicle against loss of his property or the law enforcement agency against the occupant's claim for failure to guard against such loss. This justification has a very hollow basis indeed, if the occupant disclaims that any valuables are involved and is willing to consent to the agency's failure to afford him such protection by an inventory search.[1]

(5)
Having determined that this search did not qualify as a permissible "true inventory *517 search", we turn now to two alternative contentions of its validity.
The trial judge ruled that the search was valid as incident to a lawful arrest. A search incident to an arrest is authorized for the purpose of protecting the arresting officer and is limited to a search of the person of the defendant and the area within his immediate control. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). See, e. g., State v. Robinson, 342 So.2d 183 (La.1977). At the time of this search, the defendant Gaut was handcuffed and in the back seat of the trooper's patrol car. His automobile cannot be considered, at this time, to have been within his control, nor did the arresting officer assert any non-inventory justification for the search, such as to protect himself.
The second contention concerns the state's claim that, after the trooper discovered the marijuana, he had probable cause to search the vehicle for other contraband without a search warrant. The marijuana was found in the ashtray as the result of an unconstitutional and intended rather than inadvertent search. The first illegal search cannot be used as a bootstrap to justify an even further intrusion into the individual's privacy.

Decree
We therefore conclude that the evidence seized from the defendant Gaut's vehicle was the product of an unreasonable search in violation of our state constitution. The trial court erred in overruling the defendant's motion to suppress such evidence. Accordingly, its judgment is reversed, and the defendant's motion to suppress the evidence is granted. The case is remanded for further proceedings in accordance with law.
REVERSED AND REMANDED.
SANDERS, C. J., and SUMMERS, J., dissent.
NOTES
[1] Here, the state argues that such consent by an intoxicated individual might be ineffective. The intoxicated individual's consent to take a PEI test, for instance, the voluntariness of his consent to a search of his vehicle or of any statement he gives through his consent to waive Miranda rights, have withstood repeated attacks under circumstances similar to the present. See, e. g., State v. Taylor, 336 So.2d 855 (La.1976) and State v. Strange, 334 So.2d 182 (La.1976). The departmental regulation apparently does not contemplate that, instead of the forms required for an inventory search, its purposes might be avoided by similar alternate forms to be executed by the motorist consenting that his vehicle be left unsearched and parked; or that, instead of waiting for the wrecker to arrive and remove the vehicle, the police wait for a reasonable time for the arrival of a member of the occupant's family or a friend to remove the vehicle.